

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00398-CV

Caroline **BUSWELL**,
Appellant

v.

**THE GWSPI COMPANY LLC** as Successor in Interest to Wilmington Trust, NA,
Trustee of the Jeffrey P. Blanchard 2013 Family Trust,
Appellee

From the 224th Judicial District Court, Bexar County, Texas
Trial Court No. 2015-CI-06197
Honorable David A. Canales, Judge Presiding

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Luz Elena D. Chapa, Justice

Delivered and Filed:  October 7, 2015

REVERSED AND RENDERED

This is an accelerated appeal of the trial court's order denying Caroline Buswell's special appearance.  Buswell contends the trial court erred in denying her special appearance because she did not have minimum contacts with Texas, and the exercise of jurisdiction over her does not comport with traditional notions of fair play and substantial justice.  We reverse the trial court's order and dismiss the underlying claims against Buswell.

**BACKGROUND**

In February of 2013, Wilmington Trust, National Association as Trustee of The Jeffrey P. Blanchard 2013 Family Trust submitted an application to Life Insurance Company of the Southwest (LSW) for a $10,000,000 life insurance policy on the life of Jeffrey P. Blanchard. LSW subsequently issued the policy effective April 11, 2013. Blanchard passed away in June of 2014, and Cook TPA LLC, which was the trustee of the Trust at that time, submitted a claim to LSW for the life insurance proceeds.

On August 1, 2014, Buswell, a claims examiner employed by LSW, sent a letter to Blanchard's estate in Texas and to Cook TPA in New York, informing them LSW had concluded a claim review which included a contestable investigation. Based on LSW's comparison of Blanchard's medical records and the information provided on the life insurance application, LSW found material misrepresentations were made by Blanchard in the application and during the underwriting process. Based on these material misrepresentations, LSW stated it was rescinding the policy and was sending a check to Cook TPA refunding all premiums paid plus interest.

In April of 2015, The GWSPI Company LLC, as Successor in Interest to Wilmington Trust, NA, Trustee of the Jeffrey P. Blanchard 2013 Family Trust ("Trustee"), sued Buswell, individually, and LSW. The causes of action alleged against Buswell included fraud, conspiracy to commit fraud, and violations of the Texas Insurance Code. With regard to the trial court's jurisdiction over Buswell, the petition alleged:

> 7. The Court has jurisdiction over Defendant Buswell because this defendant engages in the business of insurance in the State of Texas, and Plaintiff's causes of action arise out of this defendant's business activities in the State of Texas.
>
> 8. This Court has personal jurisdiction over each Defendant because they do business in Texas and have sufficient contacts with the State of Texas, both generally and with regard to this specific action, so that exercise of personal jurisdiction over them is proper and does not offend traditional notions of fair play and substantial justice.

Buswell, who lives and works in Tennessee, filed a special appearance challenging both general and specific jurisdiction. With regard to specific jurisdiction, Buswell asserted she was not involved in the initial sale and issuance of the policy. Although she participated in the rescission investigation, all of her actions related to the policy were taken in Tennessee, and the letters to the Estate and the Trust were her only communications regarding the policy. Because appellee did not become successor trustee of the Trust until 2014, Buswell never had any communications with the current Trustee. Buswell asserted she did not have sufficient minimum contacts with Texas and Texas's exercise of jurisdiction over her would not comport with traditional notions of fair play and substantial justice.

The Trustee filed a response asserting the trial court had specific jurisdiction over Buswell because she committed acts or omissions in Texas constituting a tort or other violation of the law. Specifically, the Trustee asserted Buswell was engaged in the business of investigating life insurance claims in Texas and violated the Texas Insurance Code for which she is individually liable. The Trustee further asserted Buswell's wrongful conduct is evidenced by the August 1, 2014 letter she purposefully directed to the Estate in Texas in which she wrongfully rescinded the life insurance policy.

After a hearing, the trial court denied Buswell's special appearance. Buswell appeals.

### STANDARD OF REVIEW

Whether a court can exercise personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *Kelly v. Gen. Interior Const., Inc.*, 301 S.W.3d 653, 657 (Tex. 2010). Because the trial court did not issue findings of fact and conclusions of law with its special appearance ruling, we imply all facts necessary to support the judgment that are supported by the evidence. *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 150; *Kelly*, 301 S.W.3d at 657.

**PERSONAL JURISDICTION**

Texas courts may exercise personal jurisdiction over a nonresident if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction does not violate federal and state constitutional due process guarantees. *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 149; *Kelly*, 301 S.W.3d at 657. Under the first prong, the Texas long-arm statute authorizes the exercise of personal jurisdiction over a nonresident defendant who commits a tort in whole or in part in this state. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2) (West 2015); *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 149; *Kelly*, 301 S.W.3d at 659. Under the second prong, personal jurisdiction is consistent with due process when: (1) the nonresident defendant has minimum contacts with Texas; and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 150; *Kelly*, 301 S.W.3d at 657. A defendant has minimum contacts with Texas when the defendant purposefully avails itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of its laws. *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 150; *Kelly*, 301 S.W.3d at 657-58. When determining whether a nonresident purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors: (1) the defendant's contacts with Texas; the unilateral activity of another party or a third person is not relevant; (2) whether the contacts are purposeful rather than random, fortuitous or attenuated; and (3) whether the nonresident defendant has sought some benefit, advantage or profit by availing itself of Texas's jurisdiction. *Moncrief Oil Int'l Inc.*, 414 S.W.3d at 151 (quoting *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338-39 (Tex. 2009)).

A nonresident's contacts can give rise to general or specific personal jurisdiction. *Id*. at 150. In its response to Buswell's special appearance and in its brief, the Trustee only argues specific personal jurisdiction. Specific jurisdiction exists when the cause of action arises from or

is related to the nonresident defendant's purposeful activities in the forum state. *Id*. Specific jurisdiction focuses on the relationship between the defendant, Texas, and the litigation to determine whether the claim arises from the Texas contacts. *Id*.

## BURDEN OF PROOF

The plaintiff and the defendant share shifting burdens of proof in a challenge to personal jurisdiction. *Kelly*, 301 S.W.3d at 658. The plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within the reach of Texas's long-arm statute. *Id*. Once the plaintiff has pleaded sufficient allegations, the defendant bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Id*. The defendant can negate jurisdiction on either a factual or a legal basis. *Id*. at 659.

To negate jurisdiction on a factual basis, the defendant can present evidence that it has no contacts with Texas, effectively disproving the plaintiff's allegations. *Id*. The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction. *Id*.

To negate jurisdiction on a legal basis, the defendant can show that even if the plaintiff's alleged contacts are true: (1) the evidence is legally insufficient to establish jurisdiction; (2) the defendant's contacts with Texas fall short of purposeful availment; (3) for specific jurisdiction, the claims do not arise from the contacts; or (4) traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. *Id*.

## ANALYSIS

In its pleadings, the Trustee alleged the trial court had specific jurisdiction because Buswell committed a tort or violated the Texas Insurance Code while engaged in the business of investigating life insurance claims in Texas. In her special appearance, however, Buswell presented evidence to negate the Trustee's allegations by showing she is engaged in the business

of insurance in the State of Tennessee, and her only contact with Texas was the letter she sent to Blanchard's estate, which was neither the beneficiary of the policy nor a party to the underlying lawsuit. In reply to Buswell's special appearance, the Trustee referred to Buswell's statements in her letter that Blanchard's medical records and the life insurance application were reviewed during LSW's investigation, asserting this established an additional contact with Texas. Buswell responded that her review of the medical records and application occurred in Tennessee.

During the hearing on the special appearance, the trial court was heavily focused on the Trustee's allegations that Buswell violated the Texas Insurance Code, rather than on Buswell's contacts with Texas. In announcing its ruling denying Buswell's special appearance, the trial court stated:

> All right. Among other things, I do see that Ms. Buswell is — her actions relate to a Texas insurance policy, I'm sure that that much is clear. And it seems to me that her — her actions are sufficient to establish that she's in the business of insurance; that she is a person defined under the [Texas Insurance] Code; that the Petition I think it's — in respects — is— you know, does allege that she engaged in acts that are allegedly violate of 541, 542 — at least I saw 541 for sure.

Assuming the trial court is correct and Buswell is a "person" as that term is defined in the Texas Insurance Code,[1] the Texas Supreme Court has explained:

> [T]he mere existence of a cause of action does not automatically satisfy jurisdictional due process concerns. A state is powerless to create jurisdiction over a nonresident by establishing a remedy for a private wrong and a mechanism to seek that relief. Instead, jurisdictional analysis always centers on the *defendant's* actions and choices to enter the forum state and conduct business. The concept of minimum contacts is rooted in the notion that a defendant may reasonably be haled into the forum state's courts when it purposefully, not randomly or fortuitously, engages in activities there.

---

[1] "Person" is defined to include any individual engaged in the business of insurance, and is not restricted to individuals engaged in the business of insurance in Texas. TEX. INS. CODE ANN. § 541.002(2) (West 2009). In its brief, the Trustee refers to a violation of section 541.003. To violate section 541.003, a person must engage in a trade practice *in Texas* that is defined or determined to be an unfair method of competition or unfair or deceptive act or practice in the business of insurance. *Id*. at § 541.003.

*Kelly*, 301 S.W.3d at 660-61 (internal citations omitted). Therefore, the Trustee's allegation that Buswell violated the Texas Insurance Code is not sufficient to establish personal jurisdiction over her. Instead, as stated in *Kelly*, we must examine Buswell's contacts with Texas.

In this case, the only contact the Trustee has shown Buswell had with Texas was her mailing of the letter to Blanchard's estate. The mailing of the letter to Texas, however, does not establish that Buswell purposefully availed herself of the privilege of conducting activities in Texas, thereby invoking the benefits and protections of its laws. *See Moncrief Oil Int'l Inc.*, 414 S.W.3d at 150; *Kelly*, 301 S.W.3d at 657. Instead, all of Buswell's activities in this regard, including the reviewing of the medical records and life insurance application in conducting the investigation, occurred in Tennessee where she worked. Sending a letter informing Blanchard's estate of the outcome of LSW's investigation and its decision to rescind the policy does not establish Buswell "engaged in activities that constitute any presence — let alone a substantial presence — in this state." *Kelly*, 301 S.W.3d at 661. "Although the trier-of-fact may ultimately conclude that [Buswell] violated the [Texas Insurance Code], the mere commission of an act does not grant Texas courts jurisdiction over the actor." *Id*. at 660.

In its brief, the Trustee primarily relies on *Fjell Tech. Group v. Unitech Int'l, Inc.*, No. 14-14-00255-CV, 2015 WL 457805 (Tex. App.—Houston [14th Dist.] Feb. 3, 2015, pet. filed) (mem. op.) and *Carey v. State*, No. 04-09-00809-CV, 2010 WL 2838631 (Tex. App.—San Antonio July 21, 2010, pet. denied) (mem. op.). In both of those cases, however, the nonresident defendants had significantly greater contacts with Texas.

In *Fjell Tech. Group*, the trial court denied a special appearance filed by a Norwegian corporation and one of its employees, a Dutch citizen living and working in Norway. 2015 WL 457805, at *1. Those nonresident defendants were sued by a Texas corporation, alleging its product designs and confidential customer list had been misappropriated. *Id*. In holding the

nonresident defendants purposefully availed themselves of the privilege of conducting activities in Texas, the appellate court noted the nonresident defendants "initiated contact with Texas by sending marketing emails to individuals in Texas and by communicating — via Skype, email and in-person meetings — with [the] Texas-based employees" of the plaintiff. 2015 WL 457805, at *6. In addition, the nonresident defendants "sought to profit when they sent mails [sic] into Texas for the express purpose of becoming a supplier to Texas-based companies," and "[t]hey did profit when they garnered a purchase order from a Texas-based company." *Id*.

In *Carey*, the trial court denied special appearances filed by James Edward Carey III and Gwendolyn Faye Carey, who were not residents of Texas but were the sole officers, managers, and members of two companies operating in Texas. 2010 WL 2838631, at *1. The companies sold travel-related software licenses to Texas consumers for three years. *Id*. The State of Texas sued the Careys for various torts, alleging they "fraudulently obtained millions of dollars from Texas consumers through misrepresentations in the advertising and sale of travel-related software licenses." *Id*. With respect to James, the evidence showed he made two trips to Texas to arrange for the companies' offices. *Id*. at *5. He also visited the offices once or twice a year to meet with staff regarding basic product training and reviewed "scripts" for the employees to use. *Id*. He also responded to complaints by Texas consumers and signed personal guarantees and contracts for the businesses. *Id*. Gwendolyn accompanied James on his trips to Texas, was aware of the complaints by the Texas consumers, and also signed guaranteed obligations and loans for the businesses. *Id*. at *6. Both James and Gwendolyn received proceeds from selling the retail installment contracts the companies obtained from the Texas consumers to third-party finance companies. *Id*. at *5-6. This court held the Careys' "participation in the [companies'] businesses, which was aimed to extract profits from Texas consumers[,] supports specific jurisdiction with regard to each of the Careys." *Id*. at *6.

In each of the foregoing cases, the evidence established far greater contacts between the nonresident defendants and Texas than the mailing of a single letter to a non-party Texas resident. In addition, in each of those cases, the evidence established the nonresident defendants sought to profit by selling products to Texas residents. In its brief, the Trustee suggests Buswell profited by remaining employed by LSW as a result of the outcome of her investigation. First, the Trustee's suggestion or speculation is not evidence. *See 2007 East Meadows, L.P. v. RCM Phoenix Partners, L.L.C.*, 310 S.W.3d 199, 207 (Tex. App.—Dallas 2010, pet. denied) (noting speculation does not support hailing nonresident defendant to court in Texas). Second, the Trustee's suggestion does not establish how Buswell sought to benefit or profit in Texas by retaining her employment in Tennessee. Because Buswell did not purposefully avail herself of the privilege of conducting activities in Texas and did not, therefore, have minimum contacts with Texas, the trial court erred in denying her special appearance.[2]

## CONCLUSION

The trial court's order is reversed, and the claims against Buswell in the underlying lawsuit are dismissed.

Sandee Bryan Marion, Chief Justice

---

[2] Because we hold Buswell did not have minimum contacts with Texas, we do not address whether the exercise of jurisdiction over her would comport with traditional notions of fair play and substantial justice.